## MAHONE v. REEVES.

1. When proof is made of the refusal of a tender, the defendant is not entitled to have his declarations made at the refusal put before the jury as a part of the transaction.

2. When there is evidence from which the jury may infer the party was the victim of a pre-concerted plan, it is no error to instruct the jury they must find for the defendant, if they believe a fraud is committed.

3. When property is obtained without any, or for a grossly inadequate consideration, by a pre-concerted plan to effect the particular design by representing worthless things of value, it is not necessary for the injured party to offer to return the worthless thing, before his right of recaption attaches.

Writ of Error to the Circuit Court of Talladega.

TROVER by Mahone against Reeves, for the coversion of a horse.

At the trial, the following state of facts was proved by the plaintiff, to wit: On the 14th October, 1845, the plaintiff was at the house of one Jackson, in Talladega county, and was there detained several days by indisposition. One Burns, who had a blacksmith's shop near Jackson's residence, had traded the plaintiff a wagon for claims or notes on individuals whose names were not in proof, and whilst they were speaking of that trade, and at this time, when the plaintiff had a bundle of notes in his hands. Afterwards, the defendant came to the house of Jackson on

44

private business, and hearing Burns and plaintiff speak of the wagon trade, asked the plaintiff if he wanted to trade for a horse. The plaintiff answered, that if the horse was a good one, he would trade with defendant. The parties then went away, and came back the next day with the horse. The parties were in a room together, and a person who went in there asked the defendant if he had sold his horse. The defendant replied he had given him away. The witness then said, "Well, you will at least save your corn by the trade." Defendant replied, "Yes, I'll get rid of feeding him, and I may get only $50, or I may get the value of him." The plaintiff then said, "I have no doubt you will get the value of the horse; one of the men makes 150 bales of cotton." Defendant replied, "Well, may be I can get negroes for these notes;" and the plaintiff turned to the witness and inquired jocosely, "Don't you want to buy negroes?" The parties then put the horse in the stable, and while they were there, Jackson asked the defendant if he had traded his horse. Defendant replied, "Yes." "What did you get?" "I got $2300 and his—Mahone's—note for $50." Jackson said if there were no sets-off, the defendant would surely get the value of his horse out of that amount. Defendant replied, "I may get the value of the horse, and I may get the $50, and I may get none." The plaintiff then said, "I have no doubt you will get the value of the horse, one of the men makes 150 bales of cotton a year." Jackson did not remember distinctly, but thought that whilst the parties were speaking of the claims, the name of Raiford was used, and perhaps Spann also. After the defendant had gone, the witness asked plaintiff what he gave for those claims, and the plaintiff said he had given $100 at a bankrupt sale. The plaintiff objected to this evidence of his declarations, but it was allowed against his exception.

The witness did not see or examine any of the claims given by plaintiff in payment for the horse, except the $50 note, which was identified. The plaintiff left Jackson's house the next day, taking the horse with him, and was not seen by him afterwards. The plaintiff left with Jackson the waggon obtained from Burns, and the defendant left with him also the $50 note, which the plaintiff promised to send up money to

pay, when he should send for the waggon.   Two days after the defendant came and demanded the $50 note, and said he was swindled.   The plaintiff. objected to evidence of what the defendant said, and the court sustained the objection. The horse was proved to be of seven or eight hundred dol- lars value, and was afterwards taken from the possession of an agent of plaintiff, in Macon county, by a strategem.

The plaintiff proved a tender at the term of the court be- fore the trial, of the sum due on the $50 note, and the defend- ant then offered to return a bundle of papers to the attorney making the tender, and which he said were the papers he received from plaintiff.   On cross- examination, this witness was required by the defendant to state the remainder of the conversation had at the time of the tender of this money ; the plaintiff objected, but the court allowed it.   The wit- ness then stated, that the defendant, in the same conversation, said the plaintiff had cheated and swindled him in the trade, and then handed the witness, who was the plaintiff's attor- ney for sueing, a bundle of claims, or notes, which the wit- ness refused to take, and did not examine, but to the best re- collection of the witness, the defendant, in speaking of these claims, mentioned the names of Raiford and Spann, and as- serted the claims to be worthless.

The defendant introduced a witness, who testified, that a- bout the 22d September, 1845, he went with the defendant to Macon county, in search of the horse ; they saw the plain- tiff, but did not speak to him ; they then went to .another part of the county, where the horse was in charge of an agent of plaintiff.   To this agent they spoke of a trade for the horse, and the defendant having mounted him under pretence of ascertaining his gaits, he turned to the agent, and said " this is my horse," and presenting a bundle of papers ad- ded, " these are the papers Mahone gave me—he swindled me out of the horse—that is my horse still—I intend to keep him, and you can take Mahone's note, and all the papers, they are worthless any how.   The witness could not read writing, but the defendant told the person having charge of the horse, that there was a note on Mahone in the bundle. The agent took the bundle of papers, looked in it, folded it up, but said nothing.   Immediately afterwards, at the sug-

gestion of a bystander, that the defendant might be treating him badly in the affair, the agent requested the defendant to take the papers, as he did not wish to be troubled with them. The defendant took the bundle of papers saying, "I have been riding several days in search of the plaintiff and my horse—it is over forty miles out of my way home to go to see the plaintiff; he knows where I live, and I will keep the papers for him; They are worthless any how, and he can get them at any time.

The defendant then read in evidence the statement of a witness, who stated he was the brother of James and Robert Raiford, and also knows Oswell E. Burt. About the first February, 1845, the plaintiff called on witness for information about certain notes or claims, which the plaintiff then had against the persons above named, and others. That the witness then told him, he believed the notes and claims were paid off and settled. Also, that James and Robert Raiford resided in Marshall county, Miss., and likewise gave him information of the residence of the other persons on whom the plaintiff had notes and claims. The plaintiff informed witness that he had bought the claims at a sale made by the assignee in bankruptcy, as the property of one Spann. Witness stated that Robert Raiford has always been solvent, and in possession of considerable property.

The plaintiff objected to this evidence, but it was allowed.

The defendant also proved, by the depositions of James and Malicha Raiford, that certain notes to one Spann, were settled, paid, or otherwise valueless. He also produced in court the $50 note of the plaintiff, and tendered it to the plaintiff's attorney in open court. He also offered in evidence a bundle of notes or claims, and tendered them to the plaintiff at the trial, but the court would not allow them to be read in evidence to the jury.

This, in substance, was all the evidence before the jury, and on it the plaintiff asked the court to charge the jury—

1. That there was no sufficient evidence of a tender to return the plaintiff's note for $50, if that was considered of any value.

2. The court charged the jury, that if they found from the evidence, what notes were given for the horse—that these

notes, or some of them, had been paid off before the trade, and that plaintiff had been notified before he made it, that some of the claims or notes then given for the horse had been paid—and also that he failed to disclose this information to the defendant, then the failure to do so was such a fraud as would annul the contract, that being a material fact, which should have been disclosed to the defendant, under the circumstances. And if the contract was void on this ground, the defendant might peacefully retake the horse wherever he found him. And if the papers were valueless, the defendant need not return, or offer to return them before taking the horse.

3. The plaintiff asked the court to charge, that if the defendant failed to prove what claims he received for the horse, and that there was no legal proof of this fact, inasmuch as the claims themselves were the best evidence, he cannot avoid the sale, or defeat a recovery in this action, by proof of payment by Raiford.

4. That the proof in this case does not amount to fraud, so as to vitiate the sale.

5. That the information of the plaintiff, derived from the witness, Raiford, was matter of opinion, which he was not required to communicate at the trading.

6. That the defendant, to get rid of the trade, must prove to the satisfacsion of the jury—1. What he got for the horse —*if notes, he must produce the notes, or account for their loss.* 2. He must prove the notes were valueless, or show an offer to return them, either to the plaintiff or to an agent authorised by him to accept them.  3. That the plaintiff, when making the trade, either supposed facts which fair dealing required him to declare, or made false representations to induce the trade, and which did induce it, knowing the same to be falses.

The court refused all the charges except the last, which was given, with the exception of the last clause of the first paragraph above stated in italic.

The plaintiff having excepted to the several charges as given by the court, and to its refusal to charge as requested, now assigns the same as error, as he also does the several rulings in regard to the evidence.

W. P. CHILTON, for the plaintiff in error:

1. There is no proof of fraud in this case, and the charge of the court which supposes it, is erroneous and abstract.

2. The proof evidently declares that Reeves took the notes, without any guaranty of any sort from plaintiff. "He might get the value of his horse, and he might only get the $50, for which plaintiff gave his note."

3. The declaration of plaintiff, that he believed defendant would get pay for his horse, as one of the men was wealthy, was *after* the trade, and could not have *influenced it.* [Juzan et al. v. Toulmin, 9 Ala. Rep. 662.] The declaration was not trusted. [Van Arsdale & Co. v. Howard, 5 Ala. Rep. 596.] But it was at best but an opinion. [Evans & Arring-rington v. Keland, 9 Ala. Rep. 42; Williams v. Cannon, Ib. 348.]

4. The court should have charged, that plaintiff was not bound to communicate what William Raiford told him *he believed* about the claims. Such belief was not a fact, but an opinion, which is *prima facie* rebutted by the notes being outstanding.

S. F. RICE, contra:

1. Although the evidence may not seem to warrant the verdict, yet an appellate court will not reverse, where no question as to its effect was made to the jury. [Rhodes v. Sherrod, 9 Ala. Rep. 63.] Nor will this court revise a charge asked as to its effect, if there is any conflict. [Browning & Co. v. Grady, at this term.]

2. Declarations made at the time an act was done, are admissible as part of the *res gesta.* [Yarborough v. Moss, 9 Ala. R. 382; Pitts v. Burroughs, 6 Ala. R. 733.]

3. A misrepresentation may be as well by deed, or acts, or words, or by *artifices to deceive,* without any positive assertion. [Juzan v. Toulmin, 9 Ala. Rep. 684.]

4. The identity of the consideration given by Mahone to Reeves for the horse, was a question solely for the jury, and was left to them. And as there was evidence admitted without objection, tending to establish that identity, it was proper for the court to refuse to charge, that if the consideration

was notes, the notes must be produced. [P. & M. Bank v. Borland, 5 Ala. R. 531.]

5. A tender to an agent is good. And in a case of fraud, like this, the tender would have been sufficient, if not made until the trial, as the consideration was worthless. Two days after the trade, the $50 note of Mahone was tendered to his agent, Jackson.

GOLDTHWAITE, J.—1. One of the questions raised by the bill of exceptions, is, of the right of the defendant to put his own declarations before the jury as evidence, because these were made at the time of refusing to receive payment of the note given when the horse was sold. The tender of payment may not have been very material in this cause, but we cannot say it was improper, as otherwise a strong inference might be drawn against him on account of the omission. Evidence being admissible that a tender was made, the fact must stand as it does in other cases, and if the refusal cannot be shown without letting in all that the opposite party may choose to say, it would in most instances be a dangerous ceremony. In general, a tender is a mere formal act, having often no other object than the avoidance of a conclusion, and in this view it seems precisely similar to a formal demand of a chattel for the purpose of showing a conversion. In both cases it is possible there may be such a peculiar condition of circumstances as might authorize the reply of the party to be given in evidence, though in general the refusal is rather an act than a declaration. In the one case, the offer to pay, and in the other the demand of the chattel, is made, and if not accepted or refused, the same legal consequence results, independent of what may be said on the occasion. We do not remember to have met with any decision on the matter of tender, but with regard to the demand of chattels, we have two cases in which the rule is settled substantially as above stated. [Dent v. Chiles, 5 S. & P. 383; St. John v. O'Connell, 7 Porter, 466.] The declarations of the defendant, which were in this case put before the jury as part of the conversation arising at the tender, were well calculated to affect the plaintiff, although it may be the other evidence was sufficient to make out the facts then asserted. How-

ever this may be, the error is clear in permitting the declarations to go to the jury, and because of it the judgment must be reversed.

2. On the other points of the case, we think there is no substantial error. Without saying any thing which may prejudice the cause at another trial, we think it sufficiently clear, from the whole evidence, that a jury might have come to the conclusion that the defendant was the victim of a preconcerted plan. To say more upon this subject, might produce the effect of withdrawing from a jury, what is not merely their province, but their duty to determine, by the exercise of their own judgment, without being in the least degree influenced by the opinions of others.

3. It is proper however to say, that when property is obtained by one individual from another, without any, or for a grossly inadequate compensation, by a preconcerted plan to effect the particular design, by representing a worthless thing as of value, it is not in our judgment necessary for the injured party to offer to return the valueless thing before his right of recaption attaches.

For the error we have ascertained, the judgment is reversed and remanded.